2002 OK CIV APP 122

MANPOWER, INC. and CNA Insurance, Petitioners,

v.

Becky BRAWDY and The Workers' Compensation Court, Respondents.

No. 97,481.

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 9, 2002.

David B. Custar, Pierce Couch Hendrickson Baysinger & Green, Oklahoma City, OK, For Petitioners.

Charles Simons, Boettcher, Ryan, Martin & Bisher, Oklahoma City, OK, For Respondent Becky Brawdy.

KENNETH L. BUETTNER, Judge.

¶ 1 The Workers' Compensation Court found that claimant Becky Brawdy sustained a pathological change of condition for the worse to her low back and ordered temporary total disability benefits. It specifically denied employer's defenses of spoliation of the evidence and that claimant failed to give timely notice of additional medical treatment. A three-judge panel of the Workers' Compensation Court unanimously affirmed the order. We sustain.

¶ 2 In 1998, Becky Brawdy was employed by Manpower and was working temporarily at the York International plant. She fell off of a ladder and hurt her lower back. She filed her workers' compensation claim and was awarded 6.5% disability. After that time, she had surgery on her back and then filed to reopen her workers' compensation case claiming a change of condition for the worse. At trial, Manpower and its insurance company (collectively "Manpower") asserted two defenses, spoliation of the evidence and untimely filing of the petition to reopen. The defenses were denied and, after trial, the court found that Brawdy had a change of condition for the worse and awarded her temporary total disability benefits.

¶ 3 Manpower contends that the Workers' Compensation Court erred in denying its defenses. It also claims that the order was not supported by any competent medical evidence.

¶ 4 With respect to the allegation of spoliation of the evidence, Manpower claims that Brawdy's surgery destroyed any evidence it might have used to defeat the reopening of the case. "Spoliation occurs when evidence relevant to prospective civil litigation is destroyed, adversely affecting the ability of a litigant to prove his or her claim." *Patel v. OMH Medical Center, Inc.,* 1999 OK 33 ¶ 46, 987 P.2d 1185, 1202. "If applicable, destruction of evidence without a satisfactory explanation gives rise to an inference unfavorable to the spoliator." *Brown v. Hamid,* 856 S.W.2d 51, 57 (Missouri declined to recognize an independent tort of spoliation of the evidence finding that its evidentiary spoliation doctrine applied in cases where there was intentional destruction of evidence, indicating "fraud and a desire to suppress the truth." *Id.*)

¶ 5 Because the intentional destruction of evidence may occur in workers compensation proceedings, we decline to adopt Brawdy's position that it is a doctrine of civil litigation, but not one applicable to workers' compensation cases. It is conceivable that evidence in Workers' Compensation cases could be intentionally destroyed for the purpose of hindering an opponent's ability to prosecute or defend a claim. For that reason, we cannot say that the doctrine of spoliation could not apply in Workers' Compensation cases. However, the parties have cited no case, nor has our research found any case, in which the seeking and receiving of medical treatment has been deemed to be a wrongful destruction of evidence.[1] Manpower has cited us no authority that it had a right to have Brawdy examined before she sought and received treatment prior to her filing for reopening of her case. Medical treatment is generally not sought for the purpose of prejudicing the rights of those who may later be found to be liable for the treatment. And documentation of medical treatment is usually quite extensive. As a result, we will not equate the

---

1. Manpower's reliance of *Waddle v. Hawley,* 1998 OK 53, 967 P.2d 1180, is misplaced. In *Waddle,* plaintiff had a medical malpractice action pending against her doctor at the time of her death. Waddle's daughter continued the lawsuit. About two weeks after Ms. Waddle's death, defendant/doctor learned that plaintiff's expert had performed an autopsy on Ms. Waddle without notification to anyone on defendant's side and no autopsy reports were provided to defendant. In addition, Ms. Waddle's body had thereafter been cremated. The *Waddle* court excluded the autopsy evidence.

seeking and obtaining of medical treatment to spoliation of evidence.

¶ 6 For its second allegation of error, Manpower states that Brawdy did not supply any competent medical evidence to establish a change of condition for the worse. However, the medical evidence of Dr. Ellis sufficiently satisfied the statutory requirements.[2] Dr. Ellis was an examining physician at the time of Brawdy's back injury in 1998 and examined her after her back surgery in 2001. Both of his reports are in the record as well as his testimony. After his subsequent examination, he unequivocally formed the opinion that Brawdy's back injury had changed for the worse. His opinion was based on his review of his previous medical reports, the Workers' Compensation Court's orders, the report of the surgeon who performed the 2001 back surgery and his examination of Brawdy after her surgery.

¶ 7 We must apply the standard of review as stated in *Parks v. Norman Municipal Hospital,* 1984 OK 53 ¶ 12, 684 P.2d 548, 552:

When the panel-substituted decision is tendered for corrective relief, it must hence be reviewed by applying the law's traditional any-competent-evidence test of correctness. Under this standard our responsibility simply is to canvass the facts, not with an object of weighing conflicting proof in order to determine where the preponderance lies but *only* for the purpose of ascertaining whether the tribunal's decision is supported by competent evidence.

¶ 8 The order of the Workers' Compensation Court, as unanimously affirmed by the three-judge panel, is based on competent evidence. We therefore SUSTAIN the order.

JONES, J., and JOPLIN, V.C.J., concur.

---

2. 85 O.S. Supp.1995 Ch. 4, App., Rule 26 states in part: The physician's medical report or testimony at the subsequent trial must show that said physician was either the attending or examining physician at the time of the previous award or that the physician has personal knowledge of claimant's condition at that time, or it must show that the physician has examined reports, x-rays and any other medical data referring to claimant's condition at the time of the previous award.